IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CALVIN THROWER,<br>Plaintiff, | Civil Action No. 7:05-cv-00273 |
| v. | **MEMORANDUM OPINION** |
| LT. S. MULLINS, et al.,<br>Defendants. | By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Calvin Thrower, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Thrower alleges that the defendant prison officials at Red Onion State Prison (ROSP) violated his constitutional rights by holding him in segregated confinement for more than two years based on the same disciplinary charge from 2003. He asks for injunctive relief and monetary damages against the defendants.

The court filed the complaint conditionally, and notified plaintiff that he should amend to particularize the facts in support of his claims. Thrower submitted a motion to amend which the court will grant. However, inasmuch as the court finds that his allegations fail to state any claim upon which he is entitled to relief, his action must be dismissed without prejudice, pursuant to 28 U.S.C. §1915A. Under this provision, the court may dismiss an action filed by a prisoner against government officials at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted.

I.

Thrower alleges the following facts on which he bases his §1983 claims. Prison officials removed Thrower from the general population and placed him in segregation on June 28, 2003, after

1

charging him with a disciplinary infraction for assaulting another inmate. Thrower accepted a penalty offer of 15 days isolation for the assault offense. On September 28, 2003, officials transferred Thrower to ROSP, a super maximum security prison and placed him in a segregation cell while he awaited a classification ("ICA") hearing. Defendant Taylor conducted the ICA hearing the next day and approved Thrower's segregated confinement. After ninety days, Defendant Mullins reviewed Thrower's segregation status and found that he should continue in that status, although Thrower had not acquired any disciplinary charges during that period. In March and June 2004, the hearing officer again found that Thrower should remain in segregation. The officer did not credit Thrower's arguments that he had not demonstrated any further aggressive behavior since the August 2003 assault and that officials should not use the original assault to keep him in segregation.

At Thrower's September 2004 ICA hearing, he argued that officials had decided before the hearing to keep him in segregation and that the charges he had incurred since 2003 were minor. Thrower argued at his January 2005 hearing that he had not incurred any new infractions since the last hearing; the officer nevertheless kept Thrower in segregation. On January 31, 2005, officials charged Thrower with calling the counselor an insulting name. Lt. Mullins told Thrower that he would be sure to tell his replacement, Lt. Rose, to keep Thrower in segregation. At Thrower's March 4, 2005, ICA hearing, Lt. Rose denied the inmate release from segregation. Thrower argued that his prison job as a barber proved that he was not a security threat that needed to be segregated.

Thrower complains that segregation cells at ROSP are "illuminated for 24 hours a day" and on "23 to 24 hours complete lockdown." He asserts that as a result of his lengthy confinement under these conditions, he has suffered "injuries to his health and mental well being," depression, great pain of body and mind, and mental anguish. He asserts that the defendants' actions violated his

2

constitutional rights by (1) punishing him with two years of segregation in violation of due process when the penalty offer he accepted during disciplinary proceedings was for only fifteen days in isolation; (2) imposing segregation as cruel and unusual punishment; (3) disregarding the effect that segregation has had on his mental and physical health; and (4) acting with deliberate indifference to his serious medical needs resulting from constant illumination.

II.

To state a cause of action under §1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). While convicted prisoners relinquish many rights upon being incarcerated, the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate may be punished by conditions dramatically different from the range of restraint contemplated by his sentence. See Sandin v. Conner, 515 U.S. 472 (1995). However, where deprivation of a state-created protection and/or status does not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," federal due process rights are not implicated. Id. In other words, where a change in a prisoner's housing assignment or a loss of privileges is not significantly different from the basic conditions in any prison housing assignment, he has no claim for relief under the Due Process Clause or §1983, even if the change occurred without all the state-created procedural protections. Id. Of course, state regulations may require more stringent procedural protections before such a change can occur. But a state's failure to abide by its own law as to procedural protections is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990), and is, therefore, not actionable under §1983.

3

The court cannot find that Thrower has alleged facts indicating that conditions in segregation at ROSP impose atypical hardship upon him when compared with conditions in other housing units or other prisons. Indeed, the Court in <u>Sandin</u> found that segregated confinement conditions did not create a liberty interest in avoiding such a status and consequently found that an inmates' assignment to such a unit did not give rise to any federal procedural protections. In any event, Thrower's allegations do not suggest that his classification hearings did not include all the procedures required for such hearings; he is merely disagreeing with the outcome of those hearings. Such decisions rest in the discretion of the hearing officer and do not constitute a procedural omission. Because Thrower's allegations do not give rise to any federal due process rights related to his classification to segregated confinement at ROSP, the court will dismiss Claim (1), pursuant to §1915A(b)(1). To the extent that the hearing officer's decision violates state prison regulations, Thrower may pursue state law claims in state court, but the court declines to address such claims here. <u>See</u> 28 U.S.C. §1367(c).

### III.

In Claims (2), (3) and (4), Thrower alleges that by continuing his assignment to segregation, the defendants have imposed cruel and unusual punishment on him. However, his allegations do not give rise to any such claim. First, he fails to demonstrate that he has been diagnosed with mental or physical injuries caused by conditions in segregated confinement that are so serious as to require medical or mental health treatment. Without evidence that the conditions in segregation have caused, or will cause, him such serious physical or mental injury, he cannot state a claim that the housing assignment constitutes cruel and unusual punishment. <u>See</u> <u>Strickler v. Waters</u>, 989 F.2d 1375 (4th Cir. 1993). The court will dismiss Claim (2) accordingly, pursuant to §1915A.

4

Second, to the extent that Thrower claims that he may have a serious medical or mental health need, he has no actionable §1983 claim against anyone at this time. The current defendants are not medical professionals and they may rightly rely on medical staff to inform them if Thrower needs to be reassigned for medical or mental health reasons. See Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Although Thrower might have claims against medical staff if they ignored medical or mental health needs of which they were aware, Thrower does not allege that he has ever filed any grievances specifically asking for medical or mental health treatment. Until he exhausts administrative remedies regarding such needs, his claims of deliberate indifference to serious medical or mental health needs are not actionable against any one. See 42 U.S.C. §1997e(a); Estelle v. Gamble, 429 U.S. 97 (1976). Therefore, the court will dismiss Claims (3) and (4), pursuant to §1915A. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to the Office of the Attorney General of Virginia.

ENTER: This 5th day of July, 2005.

/s/ James C. Turk
Senior United States District Judge